**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Kenneth A. Hinton, | |
| Plaintiff, | |
| v. | Civil Action No. 1:08-cv-00667-RWR |
| Corrections Corporation of America [Correctional Treatment Facility Washington, DC], | |
| and | |
| Corrections Corporation of America [Company Headquarters Nashville, TN], | |
| Defendants. | |

**DEFENDANT CORRECTIONS CORPORATION OF AMERICA'S REPLY
MEMORANDUM IN SUPPORT OF IT'S MOTION TO DISMISS**

Defendant Corrections Corporation of America ("CCA"), through counsel, submits this reply memorandum in support of its Motion to Dismiss.

In Plaintiff's Opposition to Defendant's Motion to Dismiss, he raises only vague conclusory allegations that he complied with the CCA grievance process, without refuting the sworn review of those grievances by Joyce Allen, who determined that Plaintiff *failed to submit a single grievance* regarding the allegations in his Complaint.[1] Further, Plaintiff attempts to survive Defendant's motion by raising immaterial and irrelevant issues of fact to support his contention that he should be excused from the proper exhaustion requirement, or, alternatively, that Defendant should be estopped from using exhaustion as an affirmative defense. Those purported "facts" are insufficient to create a *genuine* disputed material fact; thus, Defendant's motion should be granted.

---

[1] *See* Affidavit of Joyce Allen ("Allen Aff") ¶ 19.

## I.    <u>STANDARD OF REVIEW</u>

In evaluating whether a plaintiff has exhausted administrative remedies, a court may consider matters outside of the pleadings.[2]    Furthermore, the Court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."[3]

To defeat a motion under FED. R. CIV. P. 12(b)(6) or 56, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts."[4]  The nonmoving party "must offer some hard evidence that its version of the events is not wholly fanciful."[5]   In other words, the Court will accept as true any factual assertions contained in affidavits or attachments submitted by the defendant unless the plaintiff submits affidavits or documentary evidence showing that the defendant's assertions are untrue.[6]  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[7]

"Although as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."[8]  Another exception arises "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account."[9]  Thus, summary judgment "is *most likely* when a plaintiff's claim is supported solely

---

[2] *See Al-Owhali v. Ashcroft,* 279 F.Supp.2d 13, 21 (D.D.C. 2003).
[3] *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).
[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).
[5] *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998).
[6] *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992)
[7] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).
[8] *Green v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999).
[9] *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005)(citation omitted).

by the plaintiff's own self-serving testimony, unsupported by collaborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."[10]

Thus, the question for the Court is not whether *any* evidence supports the nonmoving party's assertions; rather, there must be evidence on which a jury could reasonably find in that party's favor.[11]  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any *genuine* factual issues that properly can be resolved only by a finder of fact because *they may reasonably be resolved in favor of either party*."[12]  Therefore, "[Judges are no] longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof…. [The question is] not whether there is literally no evidence [supporting the nonmoving party], but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[13]

## II.    LEGAL ARGUMENT

Plaintiff does not dispute that proper exhaustion of his administrative remedies, requires that "a prisoner must comply with procedural rules, including filing deadlines, as a precondition for filing a civil suit in federal court, regardless of the relief offered through the administrative process."[14]  Rather, Plaintiff contends, based only on his own self-serving, unsupported avowals, that he fully exhausted his administrative remedies under the five-step CTF grievance policy.  Furthermore, Plaintiff suggests throughout his opposition that either he should be excused from proper exhaustion, or that Defendant should be estopped from raising exhaustion as an affirmative defense.  None of those arguments have merit.

---

[10] *Johnson v. Wash. Metro. Area Transit Auth.,* 883 F.2d 125, 128 (D.C. Cir. 1989) (emphasis added).
[11] *Anderson,* 477 U.S. at 248-249; *Jeffreys,* 426 F.3d at 554; *Johnson,* 883 F.2d at 128.
[12] *Anderson,* 477 U.S. at 250 (emphasis added).
[13] *Id.* at 251 (internal quotation marks omitted) (quoting *Improvement Co. v. Munson,* 81 U.S. 442, 448 (1872)).
[14] *Malik v. District of Columbia,* 512 F.Supp.2d 28, 30 (D.D.C. 2007).

A.    **Plaintiff did not properly exhaust his available administrative remedies.**

While Plaintiff only alleges generally that he "complied with the CCA/CTF grievance procedures regarding the available administrative remedies"[15] or that "I submitted numerous 'Institutional Inmate Grievances'",[16] Plaintiff provides no evidence that he actually did properly file grievances or that he exhausted all administrative remedies available to him.[17] Under oath, Joyce Allen identified the only six grievances submitted by Plaintiff at CTF.[18] Plaintiff submitted one grievance complaining that, in a different housing unit than the one alleged in the Complaint, he did not timely receive fresh linens.[19]  The other five grievances submitted by Plaintiff relate to his request for prescription eyeglasses.[20]  Furthermore, Ms. Allen, attached copies of all of these grievances to her affidavit and authenticated them.[21]

While Plaintiff did submit grievances following the CTF grievance procedure, during his incarceration, *not a single* grievance relates to, mentions, or provides any notice to Defendant regarding *any* allegation in the Complaint.  Plaintiff's self-serving and unsupported allegations are undermined by other credible evidence and fail to establish any genuine issue of material fact.  As a result, Plaintiff clearly did not properly exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

B.    **Plaintiff must not be excused from his obligation to comply with the CTF grievance policy nor should Defendant be estopped from raising exhaustion as an affirmative defense.**

Plaintiff contends, alternatively, that he should be excused from the exhaustion requirement, or that Defendant should be estopped from raising exhaustion as an affirmative defense, because (1) he was not provided grievance forms, specifically Emergency Grievance

---

[15] Pltf's Opp. [ECF 11] at 1.

[16] Affidavit of Kenneth Hinton ("Hinton Aff.") (Exhibit A to both Plaintiff's Complaint and Opp.) at ¶ 4.

[17]  In accord with *Fox v. Strickland,* 837 F.2d 507 (D.C. Cir. 1988) and *Neal,* 963 F.2d at 456, Plaintiff was instructed by the Court that he must set out specific facts showing a genuine disputed issue of material fact.  *See* April 9, 2008 Order [ECF 7].

[18] Allen Aff. ¶ 12.

[19] Allen Aff. ¶ 13.

[20] Allen Aff. ¶¶ 14-18.

[21] Allen Aff. ¶¶ 13-18 and Attachments B-G.

Forms;[22] (2) Plaintiff's use of informal channels is sufficient to satisfy the PLRA;[23] (3) Plaintiff was transferred before his grievances were resolved;[24] (4) Plaintiff was not aware of the proper grievance procedure;[25] and, (5) Plaintiff was led to believe that administrative remedies were not available.[26]  However, it is patently obvious that Plaintiff was aware of the grievance procedure as he did file grievances on other issues, was provided grievance forms and was aware that his complaints were indeed grievable.  Plaintiff's reliance on informal channels to resolve his grievances runs contrary to *Woodford* and is based on inapposite case law.  Finally, Plaintiff's transfer to a BOP facility, is no more than a red-herring.

### 1.    CCA employees properly advised Plaintiff of the Inmate Grievance Procedure and provided all necessary forms.

Each inmate at CTF is provided with an Inmate Handbook, which outlines the CTF grievance procedure.[27]  Furthermore, inmates have access to Policy 14-5, the Grievance Policy, in their housing units and the CTF Law Library, or may obtain a copy upon request to facility staff.[28]  As outlined in applicable case law, "the institution has made a reasonable, good faith effort to make the grievance procedure available to inmates; and inmate may not close his eyes to what he reasonably should have known."[29]  Thus, not only should Plaintiff have known about the CTF grievance procedure, but in his very first grievance submitted nearly two weeks before the allegations arose, Plaintiff admitted receiving and being familiar with the Inmate Handbook.[30]  Moreover, the only change to the grievance policy during Inmate Hinton's incarceration at CTF was to make the informal resolution the first mandatory step.  During that transition, however, Inmates were permitted to skip the first step, and proceed directly with filing

---

[22] Pltf's Opp. at 2.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 4.
[26] *Id.*
[27] Allen Aff. ¶ 7.
[28] *Id.*
[29] *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003) (*citing Hall v. Sheahan,* No. 2000 C 1649, 2001 WL 111019, *2 (N.D. Ill. Feb. 2, 2001)).
[30] Allen Aff, Attach. B ("Pursuant to the CCA/CTF Inmate Handbook, Page 12 states units have washers and dryers for washing uniforms, undergarments etc. I request (2) laundry/washed sheets, ASAP.")

a formal grievance.[31]  In other words, no new inmate handbook needed to be provided to Inmate Hinton, since he would not have been penalized for following the grievance policy as set forth in his existing Inmate Handbook.

Second, Inmate Hinton's unsworn allegations that he was not provided grievance forms are patently false.  Inmate Hinton received grievance forms on or about May 4, May 14, May 20, June 20, July 12, and July 30, 2007.[32]  The same form is used for both normal and Emergency Grievances; in order to submit an Emergency Grievance, the inmate only needs to write "Emergency Grievance" on the grievance envelope when he places it in the grievance mail box.[33]

Third, Inmate Hinton's unsworn claims that he had been lead to believe that administrative remedies were unavailable is simply false.  Plaintiff only alleges that Ms. Allen told him "that he needed to file an 'Inmate Request to Staff.'"[34]  However, unlike in *O'Connor*[35], Ms. Allen did not direct the inmate outside of the grievance process; rather, Ms. Allen encouraged him to seek an informal resolution, which would permit him to initiate the grievance process.[36]

Moreover, Plaintiff's own prior history of filing grievances at CTF undermine and contravene any inference that he did not believe he could file a grievance regarding delayed or inadequate medical care.  The conditions giving rise to Plaintiff's Complaint arose on or about May 20, 2007.[37]  Yet, before that date, Plaintiff submitted one grievance requesting clean sheets and a medical grievance concerning delayed delivery of his eyeglasses.[38]  Plaintiff's medical grievance regarding his eyeglasses was sustained, and another appointment with the

---

[31] Allen Aff. ¶ 9.
[32] *See* Allen Aff, Attach. B-G (grievance forms submitted by Plaintiff).
[33] *See* Allen Aff, Attach A at 6.
[34] Pltf's Opp. at 1.
[35] *O'Connor v. Featherstom,* 2002 WL 818085, *3 (S.D.N.Y. Apr. 29, 2002).
[36] Allen Aff. ¶ 8.
[37] Hinton Aff. ¶ 2.
[38] Allen Aff. ¶¶ 13-14, and Attach. B-C.

ophthalmologist was scheduled as a result.[39]  The case cited by Plaintiff in his opposition notes that there is "no basis for such belief [that administrative remedies were unavailable] where plaintiff had previously filed several grievances in other matters and had been successful in at least one."[40]

> **2.    Plaintiff's failed attempts at informal resolution are not sufficient to satisfy 42 U.S.C. § 1997e(a).**

Plaintiff alleges that he submitted several informal requests, and that his effort to informally resolve his complaints is sufficient to meet the PLRA.  However, seeking only informal resolution is not proper, if, as here, Plaintiff does not receive satisfaction of his complaints.[41]  Plaintiff alleges that his requests were "ignored"[42] and that his "numerous [informal] request[s] … went unattended."[43]  As Plaintiff did not receive any satisfaction in response to his informal requests, they are insufficient to constitute exhaustion.

Furthermore, Plaintiff's reliance on *Lewis* is misplaced.  *Lewis* not only precedes *Woodford,* which established that proper exhaustion is mandatory, but is inapposite.  The holding in *Lewis* is based on a line of cases arising from New York State, where, by statute "the inmate grievance program is intended to supplement, not replace, existing formal or informal channels of problem resolution."[44]  Here, however, informal resolution attempts are not a recognized alternative to the CTF Grievance Policy, but are only the first step of the process.[45]  Since

---

[39] *Id.* ¶ 14 and Attach. C.

[40] *Rivera v. Good,* 253 F.Supp.2d 735, 747 (S.D.N.Y. 2003) (*citing Berry v. City of New York,* No. 00 Civ. 2834(RMB)(JCF), 2002 WL 31045943, *8 (S.D.N.Y. June 11, 2002)).

[41] *Rivera,* 253 F.Supp.2d at 752 ("When such informal procedures are used *and produce a favorable result*, the exhaustion requirement is satisfied, as it makes little sense to require a further, formal grievance process.  Yet the outcome of the investigation produces no favorable resolution for Rivera …. Thus, he has not exhausted his administrative remedies for this claim.")(emphasis added); *Jackson v. Corrections Corp. of America,* Civ. No. 06-1241(CKK), 2007 WL 1848014, *6 (D.D.C. June 27, 2007) ("The PLRA does not require a prisoner to complete the entire administrative process if he has received the relief requested.").

[42] Compl. at 4.

[43] Hinton Aff. ¶ 5.

[44] *Lewis ex rel. Lewis v. Gagne,* 281 F.Supp.2d 429, 434 (N.D.N.Y. 2003) (*citing* N.Y. COMP. CODES R. & REG. tit. 7, § 701.1)

[45] Allen Aff. ¶¶ 8-10.

Plaintiff admits that his informal resolution efforts were not fruitful, it cannot be inferred that he exhausted all availably remedies when he did not avail himself to any subsequent steps.

### 3.    Plaintiff's transfer is a red herring.

Plaintiff raises another unsworn allegation that his attempts to exhaust his administrative remedies were interrupted by his transfer from CTF to a Bureau of Prisons facility.[46]   However, the CTF grievance process, including appeals, continues to be available, even when he has been released or transferred from CTF.[47]   While it may be true that the Bureau of Prisons did not permit Plaintiff to keep all documents in his possession at CTF,[48] it is puzzling that Plaintiff neither identifies nor provides copies of any subsequent collaborating correspondence regarding his alleged efforts to continue to exhaust his administrative remedies.

In any event, even if such evidence does exist, by that time, Plaintiff's grievances would have been untimely.  Plaintiff alleges that the conditions giving rise to his exposure to MRSA arose between May 28, 2007 and June 9, 2007.[49]   Inmates are required to submit grievances within seven days from when the problem first became known to the inmate.[50]   Likewise, Plaintiff alleges that he had to wait "an additional week" beyond June 11, 2007, to receive adequate medical care.[51]   Thus, any grievance regarding Plaintiff's complaints must have been submitted on or before July 1, 2007, when Plaintiff was incarcerated at CTF, in order to have been timely.  Yet Plaintiff did not submit any such grievance.[52]   While Plaintiff could have timely continued any appeal following his transfer, by that time it was too late for him to file a grievance.  "The untimely filing of an inmate grievance alone supports the conclusion that Plaintiff failed to properly exhaust his administrative remedies."[53]

---

[46] Pltf's Opp. at 3.
[47] *See* Allen Aff., Attach. A at 10 [ECF 6-2 at 18]
[48] *See* Hinton Aff. ¶ 8 ("I was not allowed to bring my 'only copies' of such grievances with me.")
[49] Hinton Aff. ¶ 3.
[50] Allen Aff. ¶ 8.a.
[51] Hinton Aff. ¶ 6.
[52] Allen Aff. ¶¶ 12 and 19.
[53] *Malik,* 512 F.Supp.2d at 32.

4.    The Court should not create an "imminent danger" exception to the exhaustion requirement.

Throughout his opposition, Plaintiff asserts that he was in "imminent danger."[54] Plaintiff does not identify any case permitting an inmate in "imminent danger" to bypass the exhaustion of administrative remedies.  While no case before the D.C. Circuit or this court has discussed an "imminent danger" exception from the exhaustion requirement, every other court to consider such a proposition has rejected it.[55]

## III.   CONCLUSION

It is not enough for any incarcerated plaintiff to raise general allegations that he "filed grievances" and "exhausted remedies."  A plaintiff must actually exhaust those remedies for each claim raised in the Complaint.  Claims where remedies are not exhausted are subject to dismissal.[56]  Since there is no genuine disputed issue of material fact that Plaintiff did not file any grievance concerning the claims raised in the Complaint, in accordance with the CTF Grievance Policy, dismissal is appropriate.  Furthermore, Plaintiff's grievance history, and the few sworn statements, which are self-serving, unsupported, or undermined by other credible evidence, demonstrate the Plaintiff is not entitled to be excused from the exhaustion requirement and that Defendant CCA need not be estopped from pursuing it as an affirmative defense.

---

[54] Pltf's Opp. at 1, 2, 4 and 5.

[55] See Arbuckle v. Bouchard, 92 Fed. Appx. 289, 291 (6th Cir. 2004) ("The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury"); Cochran v. Caruso, No. 1:07-CV-228, 2008 WL 397597, *5 (W.D. Mich. Feb. 11, 2008) ("The statutory exhaustion requirement does not provide an exception for medical claims or exigent circumstances.")(collecting cases); Carter v. White, No. 07-1170, 2007 WL 2936657, *1 (C.D. Ill. June 29, 2007) ("Even if the plaintiff could show he is in imminent danger, he has failed to exhaust his administrative remedies."); Broom v. Rubitschun, No. 1:06-CV-350, 2006 WL 3334997, *4 (W.D. Mich. Nov. 17, 2006) ("The PLRA does not excuse exhaustion for prisoners who are under imminent danger for serious physical injury, much less for those who are afraid to confront their oppressors."); King v. Warden of FCI-Williamsburg, C/A No. 0:06-2478-CMC-BD, 2006 WL 2988442, *3 (D.S.C. Oct. 17, 2006) (Inmate "should first exhaust his administrative remedies before bringing a Bivens action concerning his 'life in danger' allegations."); Williams v. Rich, No. CV 606-003, 2006 WL 2534417, *10 (S.D. Ga. Aug. 30, 2006) ("a prisoner fearing for his life must wait to exhaust administrative remedies before filing suit in federal court"); Richard v. Blanco, Civil Action No. 06-851-LC, 2006 WL 3497739, *2, n.1 (W.D. La. Aug. 25, 2006) ("a plaintiff's assertion that he was not required to exhaust his administrative remedies because he faced a risk of immediate harm is without merit as the PLRA does not provide for such excuse from exhaustion."); McAlpin v. Toney, 375 F.3d 753, 755 (8th Cir. 2004) (claim falling within the imminent danger exception to 28 U.S.C. § 1915(g) must nonetheless meet the mandatory exhaustion requirements of 42 U.S.C. § 1997e(a)).

[56] Jackson, 2007 WL 1848014, *6.

Respectfully submitted,

By    s/ Jennifer L. Holsman
      Daniel P. Struck (D.C. Bar No. CO0037)
      Jennifer L. Holsman (D.C. Bar No.
      495296)
      JONES, SKELTON & HOCHULI, P.L.C.
      2901 North Central Avenue, Suite 800
      Phoenix, AZ  85012-2728
      Telephone:  (602) 263-1700
      Facsimile:  (602) 263-1784
      dstruck@jshfirm.com
      jholsman@jshfirm.com

      Paul J. Maloney (D.C. Bar No. 362533)
      Mariana Bravo (D.C. Bar No. 473809)
      CARR MALONEY P.C.
      1615 L Street, NW, Suite 500
      Washington, DC  20036-5652
      Telephone:  (202) 310-5500
      Facsimile:  (202) 310-5555
      pjm@carrmaloney.com
      mdb@carrmaloney.com

      Attorneys for Defendants Corrections
      Corporation of America

## CERTIFICATE OF SERVICE

I hereby certify than on this 26th day of  June 2008 a true copy of the foregoing was mailed, first class, postage prepaid, to:

Kenneth A. Hinton
2200 Wilson Blvd., Suite 102-004
Arlington, VA 22201
*Plaintiff Pro Se*


Paul J. Maloney, Esq.
Mariana Bravo, Esq.
CARR MALONEY, P.C.
1615 L Street, N.W.
Suite 500
Washington, DC   20036

Attorneys for Defendants, *Corrections Corporation of America, Douglas Caulfield and Duane Belfield*


 s/ Jennifer L. Holsman
Jennifer L. Holsman